NOTICE
Decision filed 09/24/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231348-U

NOS. 5-23-1348, 5-23-1349 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jackson County. |
| | ) | |
| v. | ) | Nos. 22-CF-206, 22-CF-208 |
| | ) | |
| CHARLETON J. PATTERSON, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE SHOLAR delivered the judgment of the court.
Presiding Justice McHaney and Justice Cates concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's convictions are reversed for a violation of his statutory speedy-trial rights where the delays attributed to defendant were due to a codefendant's need for conflict-free counsel.

¶ 2    In Jackson County case No. 22-CF-206, defendant, Charleton Josh Patterson, was charged with three counts of aggravated discharge of a firearm, one count of unlawful use of weapons by a felon, and one count of violation of bail bond. In Jackson County case No. 22-CF-208, defendant was charged with aggravated unlawful use of a weapon, unlawful use of weapons by a felon, and obstructing identification. The State successfully joined the cases for trial, and defendant was convicted of several charges following a jury trial. On direct appeal, defendant raises numerous arguments. Defendant contends as follows: (1) he was denied his statutory right to a speedy trial; (2) the evidence was insufficient to support a conviction for aggravated discharge of a firearm;

1

(3) the evidence was insufficient to support a conviction for aggravated unlawful use of a weapon; (4) the trial court erred by denying his motion to sever the charge of unlawful use of weapons by a felon; (5) the trial court erred by denying his mid-trial motion to suppress, both on its merits and as untimely, or alternatively, that trial counsel was ineffective for failing to timely file a motion to suppress; (6) he was deprived of a fair trial by the State referencing "gangs" during closing argument; and (7) the trial court improperly collapsed the three step *Batson* inquiry into a single step during *voir dire*. For the following reasons, we find that defendant's statutory right to a speedy trial was violated and reverse defendant's convictions.

¶ 3                                    I. BACKGROUND

¶ 4      This recitation of the facts includes only those necessary to resolve this appeal. We will recite additional facts in the analysis section as needed to address the specific arguments of the parties.

¶ 5      In case No. 5-23-1348 (22-CF-206), defendant was charged with three counts of aggravated discharge of a firearm (counts 1-3), Class 1 felonies, in violation of section 24-1.2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.2(a)(2) (West 2020)); violation of bail bond (count 4), a Class 4 felony, in violation of section 32-10(a-5) of the Code (*id.* § 32-10(a-5)); and unlawful use of weapons by a felon (UUWF) (count 5), a Class 3 felony, in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)). These charges were the result of an incident that occurred in downtown Carbondale on April 30, 2022.

¶ 6      In case No. 5-23-1349 (22-CF-208), defendant was charged with aggravated unlawful use of a weapon (AUUW) (count 1), a Class 2 felony, in violation of section 24-1.6(a)(1), 3(A-5) of the Code (*id.* § 24-1.6(a)(1), 3(A-5)); UUWF (count 2), a Class 3 felony, in violation of section 24-1.1(a) of the Code (*id.* § 24-1.1(a)); and obstructing identification (count 3), a Class A

2

misdemeanor, in violation of section 31-4.5(a)(3) of the Code (*id.* § 31-4.5(a)(3)). These charges were the result of a traffic stop that occurred on May 1, 2022, the day after the incident in Carbondale.

¶ 7    On the State's motion, the cases were tried together, along with the cases involving his codefendants, Simeon Patterson (Simeon[1]) (defendant's twin brother) and Demarcus Jones (Jones). In 22-CF-206, the jury found defendant guilty of one count of aggravated discharge (count 1) and UUWF (count 5).[2] In 22-CF-208, the jury found defendant guilty of AUUW (count 1) and UUWF (count 2). The trial court directed a verdict in favor of defendant as to the obstructing identification charge.

¶ 8    In 22-CF-206, the court sentenced defendant to 11 years in prison on the aggravated discharge offense and 7 years in prison on the UUWF offense. For his convictions in 22-CF-208, the court sentenced defendant to 7 years in prison on the AUUW charge. The UUWF merged with the AUUW charge. The sentences were ordered to be served concurrently.

¶ 9    The evidence at trial demonstrated that in the early morning hours of April 30, 2022, a large number of people (50-100) gathered in parking lots in downtown Carbondale. The police responded to a call for shots being fired. Due to the large number of people relative to the number of police officers, the scene was not secured. On the scene, police recovered a total of 7 .40-caliber shell casings and 10 9-millimeter shell casings. Police also recovered a cell phone with notifications appearing to be addressed to defendant. Several identification cards for defendant, including a current driver's license, were found inside the cell phone case. Police also recovered a white ski mask that was rolled up on the bottom and resembled a cap.

---

[1]Because defendant shares a last name with his twin brother, to avoid confusion, this court will refer to Simeon Patterson by his first name.

[2]Count 4 was severed prior to trial. The jury found defendant not guilty of counts 2 and 3, both aggravated discharge charges.

¶ 10    The parking lots in question were under video surveillance, and the police reviewed video footage of the incident. Three suspects were identified from the video, all wearing plain white t-shirts. One suspect wore a white ball cap, one wore a black ball cap, and one wore a white beanie style cap. Carbondale Police Lieutenant Jarin Dunnigan testified that he reviewed a Snapchat video that was sent to the police. The video helped him identify individuals who were present at the time of the shooting. He also reviewed the parking lot videos which he believed showed the individuals present in the Snapchat video. The investigation ultimately focused on defendant and his codefendants, Simeon and Jones.

¶ 11    On May 1, 2022, Jackson County Deputy Nicholas Henderson conducted a traffic stop on a tan Chevy sedan. Henderson knew that the Carbondale police were looking for Simeon and Jones. He stopped the vehicle because neither the driver nor the passenger wore seatbelts. The car stopped at a Circle K gas station. The occupants exited and locked the vehicle. The occupants started to go inside the gas station when Henderson told them to stop. They complied. Henderson went to high school with Simeon and thought the driver (later identified as defendant) looked like Simeon. The passenger, later identified as Jones, fled the scene but was apprehended shortly thereafter.

¶ 12    After defendant and Jones were taken into custody, the police conducted what they characterized as an inventory search of the car. Two loaded firearms were recovered: one from under the driver's seat, the other from under the passenger seat. Subsequent lab testing tied the firearms to the scene of the shooting.

¶ 13    Following his arrest, defendant's bond was set at $750,000 in 22-CF-206 and $100,000 in 22-CF-208. Defendant remained in custody during the pendency of his cases. Attorney Thomas Moyer of the Jackson County public defender's office filed an entry of appearance on defendant's

4

behalf in both cases. Defendant's preliminary hearing took place on May 17, 2022. At the conclusion of the hearing, at the request of attorney Moyer, the trial court set the matters for trial on August 29, 2022. Shortly after the May 17 court date, attorney Moyer apparently discovered a conflict of interest and another attorney from the Jackson County public defender's office, Alex Enyart, was assigned to represent defendant. Enyart appeared with the defendant at a hearing on a motion to reduce bond on May 31, 2022.

¶ 14    On August 15, 2022, attorney Enyart filed a motion to continue the case. In the motion, Enyart specifically stated that he was "new to the case" and that he "need[ed] more time to go over the discovery." The motion also stated that a Rule 415(c) (Ill. S. Ct. R. 415(c) (eff. Oct. 23, 2020)) had been filed and that "[d]efendant will need time to review his voluminous discovery material if the Rule 415c motion is granted." Enyart's motion to disclose discovery to defendant was granted that same day. The trial court set Enyart's motion to continue for a hearing on August 22, 2022.

¶ 15    The State filed a motion for joinder on August 19, 2022. In its motion, the State asked the trial court to join defendant's cases with those of his codefendants, Simeon and Jones.

¶ 16    On August 22, 2022, defendant appeared in court with attorney Enyart. Enyart noted that he filed a motion to continue the case from the August 29 trial date. Enyart explained:

> "I will not have enough time to prepare both his discovery for review and prepare for trial if that's how we are going to proceed. You know, if he wants to go to trial, it will—in my professional opinion, it is not in his best interest at this point while I come up to speed on the case."

Enyart told the court that he tried to meet with defendant and that defendant left the "video chat room,"[3] making it difficult to prepare for trial "in terms of working with the defendant." Enyart

---

[3]Later in the same hearing, defendant disputed that he had left the video chat room.

added, "[I]f we are going to go to trial, which I am perfectly ready, willing and able to do, I can't without his cooperation in his defense."

¶ 17    Defendant addressed the trial court and told the judge that he did not give his attorney permission to file a motion to continue, and that he did not agree to the motion to continue. The judge noted that Enyart said that he was "ready, willing and able" to go to trial but requested more time to prepare, and asked defendant if he "want[ed] to proceed to trial as is?" Defendant responded, "As is, sir." In response to inquiries from the court, defendant confirmed that he did not have any questions, that he was ready for trial, and that he wanted to proceed to trial "as is." Defendant affirmed that he did not want his 120-day speedy-trial rights violated.

¶ 18    Enyart told the court that he was "advising against this" and that if he had to prepare for trial the following week, that he would not have time to provide defendant with a copy of the redacted discovery. Defendant again confirmed that he wanted to go to trial even if his attorney was not prepared. The hearing concluded without a ruling on Enyart's motion to continue, saying that they would "talk some more about it" at the motion hearing scheduled later that week.

¶ 19    Defendant's cases, as well as his codefendant's cases, were called for "all pending motions" on August 25, 2022. First, with regard to Jones, a new attorney, Matt Foster, appeared on his behalf. Although the record is not clear as to when Foster became Jones's attorney, he told the court that the file he received from prior counsel a week and a half earlier did not contain discovery. Foster explained to the trial court that he was in "an ethical quandary" since he would have such a short amount of time to prepare for trial, but that Jones insisted on proceeding to trial and did not want to give up his speedy-trial rights. For this reason, Foster had not filed a motion to continue the case.

¶ 20    Noting that defendant's motion to continue was still pending, the trial court asked Enyart if he had anything to add since the prior hearing. Enyart said that "it would be beneficial to [defendant] to have more time to prepare" but that he was maintaining a "speedy trial posture."

¶ 21    Simeon's attorney, Celeste Korando, had a pending motion for sanctions against the State. Korando stated that she just learned that one of her juvenile clients was interviewed the prior week in connection with the case. She also told the trial court that Simeon told her the day before that yet another one of her clients, Cody Dempsey, had been subpoenaed to testify in the trial. Korando advised that she was unaware that he gave a statement in regard to this case, because nothing in the discovery purported to include a statement from this client. She asked the court to sanction the State by precluding them from calling the two witnesses at trial.

¶ 22    The State responded that it was the defendants' own actions that put them in this situation, and that the discovery tendered to the defendants demonstrated that Dempsey was "on the radar" for the defense. Since Dempsey recently indicated a willingness to cooperate with the State, the State argued that it was Dempsey that put the defense in that position. Regarding Korando's juvenile client, the State explained that the juvenile reached out to the State the week before and asked to speak to detectives regarding the case.

¶ 23    Without ruling on Korando's motion for sanctions, the trial court then considered the State's motion for joinder. After hearing argument, the court granted the motion over the objections of all three defendants. The court denied Korando's motion for sanctions. Given that this created a conflict of interest for Korando, she sought to withdraw as counsel for Simeon. The court granted her motion to withdraw. Simeon asked for an attorney to be appointed immediately, noting that he was ready to go to trial the following Monday.

¶ 24    The trial court stated the following:

7

"Gentlemen, I'll note all of your demands. That you're ready for trial, you want to go to trial. You [Simeon] don't have counsel though. \*\*\* Based upon that, I'm inclined to vacate this trial date, reset it over within a short period of time. Any delay to one defendant will be joined as a delay to all defendants."

The judge then announced, "I'm going to vacate the trial dates." The judge asked Enyart if he had anything else for the record. Enyart replied, "Judge, we would object and also based on my client's request, I would like to make an oral motion to withdraw the motion to continue." The judge responded, "Okay. That will be noted. Certainly."

¶ 25 Attorneys for both defendant and Jones raised speedy trial concerns, advising the court that they believed the speedy-trial term would run on "Sunday or Monday." They asked that their clients be released on their own recognizance. The State objected to the defendants' release from custody. The trial court ruled, "We'll find that the delay to one Defendant's a delay to all Defendants in this situation. We are going to vacate the trial settings." The court also denied the "oral motions to recog."

¶ 26 Following the hearing, that same afternoon, Enyart filed a motion to withdraw as defendant's attorney. In the motion, Enyart stated that the State provided him with discovery that same day, and that the newly tendered discovery listed Jerome Snowden Jr. as a witness. The motion further stated that Enyart represented Snowden, and that the contemporaneous representation of Snowden and defendant created a conflict of interest. On August 30, 2022, the court set the motion for a hearing on September 12. At the same time, the court set all three defendants' cases for a status hearing on September 26 and for jury trial on October 3, 2022.

¶ 27 At the outset of the September 12 hearing, Enyart explained that he had a conflict of interest since he discovered that he was representing Stone, who was shot during the incident that led to charges against defendant. The court granted Enyart's motion to withdraw as counsel and appointed attorney Andrew Wilson to represent defendant. The court kept the October 3, 2022,

8

jury setting and authorized the public defender's office to turn their file over to Wilson "to get him up to speed quicker on your case, so that the October 3rd trial date will be meaningful for you in this case." When defendant asked whether his "120 days is restarted," the court told him that the speedy trial date was tolled until October 3.

¶ 28    Defendant's new attorney, Andrew Wilson, filed a motion to withdraw as counsel on September 22, 2022. In the motion, Wilson alleged that representing defendant would place an unreasonable financial burden on his private practice.

¶ 29    The trial court held a status hearing on September 26, 2022. The court noted Wilson's pending motion to withdraw. Simeon's newest attorney, Kacey Eisenhauer, orally moved to withdraw as Simeon's attorney, citing a conflict of interest. The court granted Eisenhauer's motion to withdraw. Regarding Wilson's motion to withdraw, defendant objected to the motion, which was denied by the court. The court noted the objections of the parties to the matter being continued. When asked if he had anything else to add, Wilson told the court that he did not have prior counsel's file and did not have the opportunity to review the discovery. Later, Wilson also informed the court that he had "a number of private hired cases" the following week, that he did not have anyone else to handle those matters. Wilson stated that "could pose an issue with me proceeding forward with this case." The court concluded that it had no choice but to vacate the trial setting, and it did so while again noting defendant's objections. The court did not set a new trial date.

¶ 30    The trial court held a status hearing on October 4, 2022. Attorney Daniel Kay was appointed to represent Simeon. Noting the defendants' ongoing objections to having their cases continued, the trial court set the matter for pretrial on October 25, 2022, a case management

9

conference on December 2, 2022, a status hearing on January 9, 2023, and finally a jury trial on January 17, 2023.

¶ 31 The jury trial commenced on January 17, 2023. On January 30, 2023, the jury found defendant guilty of one count of aggravated discharge (count 1, 22-CF-206); UUWF (count 5, 22-CF-206); AUUW (count 1, 22-CF-208); and UUWF (count 2, 22-CF-208).

¶ 32 Defendant filed a motion for a new trial, raising several claims of error. On November 28, 2023, defendant's motion for a new trial was denied, and the court sentenced defendant as follows: In 22-CF-206, the court sentenced defendant to 11 years in prison on the aggravated discharge offense and 7 years in prison on the UUWF offense. In 22-CF-208, the court sentenced defendant to 7 years in prison on the AUUW charge. The UUWF merged with the AUUW charge. The sentences were ordered to be served concurrently.

¶ 33 Defendant filed a timely notice of appeal on December 26, 2023.

¶ 34                                  II. ANALYSIS

¶ 35 Defendant raises several issues on appeal. However, we need only address defendant's claim that his speedy-trial rights were violated. Defendant's argument that his statutory speedy-trial rights were violated is straightforward: despite defendant consistently telling the trial court that he wanted to exercise his right to a speedy trial, his matters were twice continued over his objection due to circumstances beyond his control. These delays caused defendant's trial to be set outside the 120-day statutory limit. For these reasons, defendant argues that the trial court abused its discretion by attributing to him the delay caused by the court's need to find conflict-free counsel for Simeon. We agree with defendant that his statutory right to a speedy trial was violated, and we therefore reverse defendant's convictions. Since we find this issue dispositive, we address only

10

defendant's claim that his speedy-trial rights were violated and need not address his remaining arguments on appeal.

¶ 36    The State argues that the trial court did not abuse its discretion by attributing the delays to defendant. Specifically, the State points to attorney Enyart's motion to continue filed on August 15, 2022, and Enyart's motion to withdraw as defendant's attorney due to a *per se* conflict of interest filed on August 25, 2022, four days before what had been the first scheduled jury trial date. The State argues that these are actions taken by Enyart that tolled defendant's speedy-trial term, and that Enyart's motion to continue was motivated by counsel's need for more time to prepare for trial, and that this need was caused, at least in part, by defendant's lack of cooperation with Enyart. We disagree.

¶ 37    Section 103-5(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-5(a) (West 2020)) implements a right guaranteed by the federal and Illinois Constitutions (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8). Although the constitutional and statutory provisions address similar concerns, the rights they establish are not necessarily coextensive. *People v. Bowman*, 138 Ill. 2d 131, 136 (1990) (citing *People v. Garrett*, 136 Ill. 2d 318, 323 (1990); *People v. Richards*, 81 Ill. 2d 454, 459 (1980)). The statute is to be liberally construed, and each case is decided on its own facts. *Id.* at 136-37 (citing *People v. Jones*, 104 Ill. 2d 268, 273-74 (1984); *People v. Reimolds*, 92 Ill. 2d 101, 106 (1982)). Section 103-5(a) states that every person in custody for an alleged offense shall be tried within 120 days from the date he is taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2020). Every person not tried in accordance with section 103-5(a) must be discharged from custody and is entitled to have the charges dismissed. 725 ILCS 103-5(d), 114-1(a)(1) (West 2020); *Bowman*, 138 Ill. 2d at 137 (citing *Richards*, 81 Ill. 2d at 459). "For purposes of a speedy-trial question, a delay is charged to

11

the accused where his act in fact causes or contributes to the delay." *Bowman*, 138 Ill. 2d at 139-40 (citing *Riemolds*, 92 Ill. 2d at 106). When pursuing a motion to dismiss for speedy trial violation, the defendant has the burden of affirmatively establishing the violation. *Bowman*, 138 Ill. 2d at 137 (citing *Jones*, 104 Ill. 2d at 280; *Reimolds*, 92 Ill. 2d at 106). "The trial court's determination as to who is responsible for the delay of trial is entitled to much deference, and should be sustained in the absence of a clear showing of the trial court's abuse of discretion." *Id.* (citing *Reimolds*, 92 Ill. 2d at 107).

¶ 38    The resolution of this matter requires consideration of this court's decisions in *People v. Roberts*, 133 Ill. App. 3d 731 (1985), and *People v. Collum*, 98 Ill. App. 3d 385 (1981). The right to a speedy trial is a personal right (*People v. Brame*, 6 Ill. 2d 412, 413 (1955)), and it cannot be waived by delays caused by a codefendant (*Roberts*, 133 Ill. App. 3d at 738). Defendant further notes that delays for the purpose of finding conflict-free counsel for a defendant are not generally attributable to the defendant. *Collum*, 98 Ill. App. 3d at 387.

¶ 39    In *Roberts*, the defendant's and his codefendant's charges were joined, and a single public defender, Harold Pennock, was appointed to represent both men. *Roberts*, 133 Ill. App. 3d at 736. Pennock moved to withdraw as counsel after concluding that although no conflict of interest existed between the two men, his contract with Marion County covered only conflicts cases. *Id.* The trial court granted the motion, and another attorney was appointed to represent both men. *Id.* The following day, the second attorney noted a potential conflict of interest between the two men, and Pennock was again appointed to represent defendant. *Id.* Thereafter, the codefendant filed a motion to sever, and despite the State confessing the motion, the trial court denied the motion to sever. *Id.*

¶ 40    The State then moved to dismiss the codefendant's charges, which was also denied by the court. *Id*. The State took an interlocutory appeal of the denial of its motion to dismiss the codefendant, and on its own motion, the court stayed the proceedings for both men. *Id.* That same date, the State and the defendant both announced that they were ready for trial. *Id.* The defendant later moved for dismissal based upon a speedy-trial violation, which was denied by the trial court. *Id.* Following trial, the defendant appealed the trial court's denial of his motion to dismiss for a speedy-trial violation. *Id.*

¶ 41    This court reversed defendant's conviction, rejecting the State's argument that the two men were inseparable for speedy-trial purposes since they were tried jointly. *Id.* at 737. This court held that, "[s]ince the right to a speedy trial is a right personal to the accused (*People v. Brame* (1955), 6 Ill. 2d 412, 413, 128 N.E.2d 911, 912), such right may not be waived because of delays occasioned by a codefendant for which the accused was not in any way responsible." *Id.* at 738. Addressing the State's contention that the defendant was partially responsible for the delay that led to Pennock's withdrawal, this court rejected that argument, noting that "where *** counsel withdraws on his own initiative, any resulting delay cannot be charged to defendant." *Id.* (citing *Collum*, 98 Ill. App. 3d at 387).

¶ 42    In *Collum*, the defendant was taken into custody and charged on June 10, 1980. *Collum*, 98 Ill. App. 3d at 385. The public defender was appointed on June 20, 1980, but later filed a motion to withdraw as counsel on August 11, 1980. *Id.* The motion to withdraw apparently alleged that the public defender had a conflict of interest. *Id.* at 387. On August 29, 1980, the motion to withdraw was granted, and on September 16, 1980, new counsel was appointed. *Id.* at 386. Just prior to trial, defense counsel filed a motion to have the defendant discharged on the basis that 132 days had passed since defendant was taken into custody. *Id.* That motion was denied. *Id.*

13

¶ 43    On appeal, this court noted that this was not a case where the public defender moved to withdraw (1) "at the direction of defendant"; (2) "under circumstances in which defendant acquiesced in the court's statement that the cause was continued on defendant's motion"; (3) "followed by defendant's request that his new counsel be given time to prepare"; or (4) where "defendant becomes disenchanted with defense counsel and seeks a replacement." *Id.* at 387. Rather, this court noted that this was a situation where the public defender sought leave to withdraw "on their own initiative." *Id.* Because the delay was not caused by the defendant, this court concluded that the delay could not be attributed to defendant and reversed the trial court. *Id.* Although *Collum*'s pronouncement that a defendant is not responsible for delays caused when appointed counsel withdraws "on their own initiative" is overly broad, *Collum* clearly stands for the proposition that a defendant is not responsible for the delay caused when his appointed counsel is forced to withdraw due to a conflict of interest.

¶ 44    Based on the facts before us, discussion of the Illinois Supreme Court's *Bowman* decision is also warranted. In *Bowman*, the defendant's public defender withdrew due to a conflict of interest. *Bowman*, 138 Ill. 2d at 135. An attorney under contract with Rock Island County to handle conflicts, Fred Kopp, was appointed to represent the defendant. *Id.* After the matter was set for trial, Kopp resigned his position as a conflicts defender, and the new conflicts attorney, Alex Jarrin, was appointed to represent the defendant. *Id.* Due to the backlog of cases and based upon his understanding that the defendant knew that this would cause a delay in the trial date, Jarrin continued the trial without having it set for a specific date. *Id.* Two months later, the defendant sent a letter to the chief judge, stating that he did not want a continuance, that he did not know Jarrin would need more time to prepare for trial, and that he was never told that the continuance would waive his right to a speedy trial. *Id.* at 136. Subsequently, yet another attorney, Richard

14

Coppula, entered his appearance on the defendant's behalf and filed a motion to dismiss the charges based upon a violation of the defendant's speedy-trial rights. *Id.*

¶ 45 The trial court dismissed the charges against the defendant and the appellate court affirmed. *Id.* As explained by our supreme court:

> "The [appellate] court viewed the defendant as being forced to choose between two compromising positions: he could have gone to trial on November 23, 1987, with unprepared counsel, or he could have waived his right to a speedy trial. The appellate court determined that this was the result of actions taken by the attorneys involved and the County of Rock Island, and was not due to any conduct on defendant's part. Thus, any decision made by defendant to waive his right to a speedy trial was made under duress." *Id.* at 138 (citing *People v. Bowman*, 180 Ill. App. 3d 755, 758 (1989)).

¶ 46 The Illinois Supreme Court reversed the appellate court, finding that the "defendant failed to affirmatively establish *** a violation, and that the trial court erred in its application of the law to the facts." *Id.* Noting that the trial court made no factual determination as to whether defendant approved or acquiesced to the change in attorneys, the *Bowman* court noted that the defendant did not object to Jarrin taking over for Kopp, and that both Jarrin and Kopp testified that defendant agreed to the change. *Id.* at 139. Accordingly, the *Bowman* court determined that the defendant had acquiesced to the delay. *Id.* at 140.

¶ 47 The court then noted that the "appellate court has repeatedly held that the delay a continuance causes is properly charged to an accused where his counsel required more time to prepare for trial." *Id.* This is based, in part, on the general rule in Illinois that a client is bound by the acts or omissions of his lawyer-agent. *Id.* at 141. Consequently, when a public defender requests a continuance on behalf of a defendant, the resulting delay is attributable to the defendant for the purpose of tolling the statutory speedy-trial period. *Id.* This is true even when the motion to continue is made in the defendant's absence. *Id.* at 142.

15

¶ 48　Applying these principles to the defendant's claim, the *Bowman* court held "that defendant cannot claim that his action, or lack thereof, did not contribute to the delay caused by Jarrin's filing of the motion for a continuance on his behalf." *Id.* at 143. Because a "party who does not promptly repudiate an attorney's unauthorized act upon receiving knowledge of such an act has effectively ratified the act," the court found that the defendant's "delay in objecting to the allegedly unauthorized waiver of his speedy-trial right *** was also a factor contributing to the delay the motion to continue caused." *Id.*

¶ 49　The *Bowman* court also discussed this court's decisions in *Roberts* and *Collum*. *Bowman* distinguished *Roberts* and *Collum* on the basis that the public defenders in both cases were required to withdraw as counsel due to a conflict of interest, meaning that the delay in those cases "was not due to the direct results of the accused's own actions, such as when the accused himself requests that the public defender withdraw." *Id.* at 144. As the *Bowman* court noted, "[w]here an attorney has a conflict of interest with the party he represents, both the attorney and the accused have no choice. The attorney must withdraw, and the accused must obtain another attorney or have new counsel appointed." *Id.* at 145. By contrast, Bowman's first attorney, Kopp, voluntarily withdrew as counsel. *Id.* Since Bowman did not object to Jarrin's representation, but rather only objected to Jarrin's trial strategy (by the filing of the motion to continue), *Roberts* was distinguishable. *Id.* The *Bowman* court acknowledged, however, that "the conclusion of the *Roberts* case is logically sound." *Id.*

¶ 50　Next, the *Bowman* court addressed the appellate court's contention that the series of events placed the defendant in a compromising position: that the defendant could either choose to go to trial with an unprepared attorney or forgo his right to a speedy trial. *Id.* at 147. The *Bowman* court disagreed. The *Bowman* court reasoned that the appellate court's logic placed the defendant in a

16

"no lose" situation: "Had defendant chosen to go to trial on November 23, 1987, and lost, his claim on appeal might have been ineffective assistance of counsel." *Id.* at 148. Recognizing that situations arise where a defendant cannot exercise both his speedy-trial right and his right to effective assistance of counsel, the *Bowman* court noted that a defendant should not be "able to exploit his constitutional right to a competent attorney and escape all charges through the technical application of the speedy-trial statute." *Id.* (citing *United States v. Russo*, 550 F. Supp. 1315, 1321 (D.N.J. 1982)). The *Bowman* court noted that it had previously concluded that "the due process rights of defendants are not denied when they are forced to choose between the two constitutional rights of speedy trial and effective assistance of counsel." *Id.* at 147 (citing *People v. Lewis*, 60 Ill. 2d 152, 156-57 (1975); *People v. Williams*, 59 Ill. 2d 402, 405-06 (1974)).

¶ 51    Turning to the case before us, based on the facts before us, we must conclude that the trial court abused its discretion in attributing to defendant the delays caused by the court's need to find conflict-free counsel for Simeon. We recognize that attorney Enyart filed a motion to continue defendant's trial date two weeks prior to the trial date scheduled on August 29, 2022. The State contends that this created a delay attributable to defendant. We disagree.

¶ 52    At the August 22, 2022, hearing on Enyart's motion, defendant appeared before the court and repudiated Enyart's request to continue the trial date. See *Bowman*, 138 Ill. 2d at 143. Notwithstanding the fact that Enyart thought a continuance would be in defendant's best interests as it would give Enyart more time to prepare for trial, Enyart stated that he was "perfectly ready, willing and able" to try the case on August 29, 2022. When the court asked defendant whether he wanted to proceed to trial "as is," defendant responded in the affirmative and reiterated that he did not want his speedy-trial rights violated. In other words, when given his choice of which of his constitutional rights defendant wanted to exercise—competent counsel or his speedy-trial rights—

17

defendant unequivocally chose his speedy-trial rights. *Id.* at 147 ("the due process rights of defendants are not denied when they are forced to choose between the two constitutional rights of speedy trial and effective assistance of counsel").

¶ 53 However, the trial court declined to rule on Enyart's motion to continue, deciding to defer the ruling until the hearing scheduled later that week on the State's motion to join the codefendants' cases for trial. Contrary to the State's argument, given that Enyart stated that he could be ready for trial and the defendant's insistence on exercising his speedy-trial rights, we cannot find that Enyart's ungranted motion to continue the case is a delay attributable to defendant. The fact remains that, at the conclusion of the hearing, the trial remained set on August 29, 2022.

¶ 54 The next hearing in this matter was held three days later, on August 25, 2022. The matter was set for "all pending motions," which included the State's motion to join the codefendants' cases for trial. Enyart told the trial court that "it would be beneficial to [defendant] to have more time to prepare" but that he was maintaining "a speedy trial posture." Despite the fact that the recent disclosure of new discovery in the matter led to a *per se* conflict of interest for Simeon's attorney, the State chose to move forward with its motion to join the defendants. The trial court granted this motion over the objection of all three defendants. Because this created a situation in which Simeon was now without counsel four days prior to trial, and despite the fact that all three defendants were objecting to a continuance, the court, on its own motion and over the objections, announced that it was vacating the August 29, 2022, jury trial setting and attributing the delay to all defendants. The State's decision to seek to join the defendants' cases, the trial court's granting of that motion, and the court's decision to delay the trial were all events beyond defendant's control. We cannot find that defendant's own actions, or lack thereof, contributed to this delay.

18

¶ 55    The State argues that attorney Enyart only withdrew his motion to continue the case after the trial court continued the case on its own motion. This is factually accurate, but we find it to be inconsequential. As noted above, defendant repudiated Enyart's motion to continue, and Enyart indicated that he was "perfectly ready, willing and able" to try the case on August 29, 2022. The trial court never ruled on Enyart's motion, but instead continued defendant's cases for an entirely different reason: its need to find conflict-free representation for Simeon. Defendant was not in any way responsible for the delay created by Simeon's circumstances. Since, as this court has noted, a defendant is not responsible for the delay caused by the court's need to find the defendant conflict-free counsel (*Collum*, 98 Ill. App. 3d at 387), it necessarily follows that a defendant is not responsible for the delay occasioned by the needs of a codefendant, which in this case was the court's need to find conflict-free counsel for Simeon. *Roberts*, 133 Ill. App. 3d at 738. Despite knowing that its motion to join the defendants could create a situation where the August 29, 2022, trial setting would need to be continued to find Simeon conflict-free counsel, the State persisted in pursuing its motion. Had the State not sought to join Simeon with defendant, defendant's trial could have, in theory, started on August 29, 2022, on day 120 of defendant's speedy-trial term.

¶ 56    The State also argues that Enyart's August 25, 2022, motion to withdraw as counsel also created a delay that is attributable to defendant. We disagree. First, we note that the August 25, 2022, hearing concluded, and the court continued the cases *prior* to Enyart's motion to withdraw as counsel. Second, Enyart's motion to withdraw cited a *per se* conflict of interest that Enyart discovered based upon the discovery provided to Enyart *that very same day*. Enyart had no choice but to withdraw. As noted above, *Collum* stands for the proposition that a defendant is not responsible for the delay caused when his appointed counsel is forced to withdraw due to a conflict of interest.

19

¶ 57    The State attempts to distinguish *Collum*, in part, based upon the timing of Enyart's motion to withdraw as counsel, noting it was filed four days prior to trial. By contrast, the State notes that the motion in *Collum* was filed well in advance of the trial date. This is a distinction without merit, as nothing in the *Collum* decision suggests that the timing of the motion to withdraw was integral to that decision. The State's attempt to likewise distinguish *Roberts* fails for the same reason.

¶ 58    In its brief, the State argues that *Bowman*, *People v. Carr*, 9 Ill. App. 3d 382 (1972), and *People v. Solis*, 207 Ill. App. 3d 357 (1991), all stand for the proposition that "any delay a continuance causes is properly charged to an accused if his attorney required more time to prepare for trial, even if not caused by an overt action of a defendant and even if a defendant objects to any continuance." This argument ignores *Bowman*'s discussion that a defendant can be forced to choose between his right to competent counsel and his right to a speedy trial, as happened in the case before us. Denying a defendant that choice makes this discussion in *Bowman* meaningless. Moreover, this argument also ignores the fact that Enyart's motion to continue was never granted.

¶ 59    Furthermore, with regard to *Bowman*, we note that the attorney therein was not *required* to withdraw but instead withdrew because he was no longer the conflicts attorney for the county. Bowman's new attorney entered his appearance and continued the case (*Bowman*, 138 Ill. 2d at 135), and the defendant neither objected to the appointment of new counsel nor repudiated the continuance until nearly two months later. *Id.* at 143. Using an attorney-agent analysis, the *Bowman* court found that the defendant acquiesced in the appointment of new counsel and effectively ratified the motion to continue by failing to timely object to the continuance. *Id.* Again, we note that the *Bowman* court found the conclusion of *Roberts* to be "logically sound." *Id.* at 145. For these reasons, *Bowman*'s analysis is not applicable to the instant case.

¶ 60    *Carr* was cited with approval in *Bowman*. *Id.* at 140-41. In *Carr*, the defense attorney's motion to continue the case was granted notwithstanding the fact that the defendant strenuously objected to the continuance. *Carr*, 9 Ill. App. 3d at 383-84. Because the defendant did not discharge his attorney, the appellate court found the delay was properly attributed to the defendant. *Id.* at 384. The *Carr* court noted that if the trial court "had acceded to defendant's demands, and had defendant been found guilty, the question would surely have arisen as to whether defendant had been denied the effective assistance of counsel who had stated that he was not prepared to defend." *Id.* at 384. *Carr* is distinguishable in that counsel's motion to continue was granted, whereas in the instant case, the motion to continue was not ruled upon prior to its being withdrawn. Furthermore, the attorney in *Carr* indicated that he needed more time to prepare the case. *Id.* at 383. By contrast, in this matter, while Enyart indicated that if defendant wanted to go to trial, it was not, in Enyart's opinion, "in [defendant's] best interest at this point while I come up to speed on the case." Enyart also told the court that he was "perfectly ready, willing and able" to try the case.

¶ 61    The *Solis* court, also relied upon by the State, was critical of *Roberts* and *Collum*, stating:

> "To the extent that the holdings of *Roberts* and *Collum* can be so broadly interpreted that a last-minute conflict of interest requiring the withdrawal of counsel can be brought to the trial court's attention just before trial so that discharge must be automatically granted, we reject such an interpretation of those cases in light of *Bowman* [citation]." *Solis*, 207 Ill. App. 3d at 363.

The facts of *Solis* are readily distinguishable from the case before this court and from the facts in *Roberts* and *Collum*.

¶ 62    In *Solis*, defense counsel *created* a potential conflict of interest shortly before trial by taking a statement from a witness who repudiated his initial identification of the defendant but then recanted his repudiation. *Id.* at 359. As a result, the attorney injected himself into the case as a potential witness, thereby creating a potential conflict of interest. *Id.* at 362. When this fact was

21

brought to the trial court's attention, the attorney moved for a continuance and agreed that the delay would be attributable to the defendant. *Id.* at 358-59. New counsel later appeared to represent defendant, and that attorney continued the case to prepare for trial. *Id.* at 359. The defendant raised no objections to the continuances. *Id.* Accordingly, the *Solis* court found that the "defendant must be deemed to have acquiesced to his representation by counsel, their withdrawal, and the resulting continuances." *Id.* at 362. Furthermore, the *Solis* court found *Roberts* and *Collum* "factually inapposite to the case before us as did our supreme court in *Bowman*." *Id.* at 363.

¶ 63    We understand the State's concern that the filing of motions to withdraw by counsel shortly before trial and late in a defendant's speedy-trial term could lead to abuses. Indeed, that was a concern of the *Bowman* court. As noted, the *Bowman* court expressed concern that a defendant who fortuitously finds himself with an overburdened attorney who needs more time to prepare his case for trial could be placed in a no-lose situation wherein the defendant could exploit his constitutional right to a competent attorney against his right to a speedy trial. *Bowman*, 138 Ill. 2d at 148. The solution to this issue is to require the defendant to choose which right he wants to exercise. *Id.* In the case before us, defendant clearly and repeatedly expressed his desire to exercise his right to a speedy trial. Nothing in the record before this court suggests defendant was trying to take advantage of his "fortuitous" circumstances. Instead, the record supports the notion that defendant tried, over the course of many hearings, to exercise his right to a speedy trial.

¶ 64    As noted, defendant repeatedly indicated his preference for exercising his speedy-trial rights. The actions of both the trial court and the State denied defendant that choice through no fault of his own. The statute, which is to be liberally construed in favor of the defendant (*Bowman*, 138 Ill. 2d at 136), requires the defendant to be tried within the statutory timeframe of 120 days. The burden is on the State to ensure that this occurs unless there are delays attributable to the

22

defendant. 725 ILCS 5/103-5(a) (West 2020); *People v. Castillo*, 372 Ill. App. 3d 11, 16 (2007). We recognize that defendant faced serious charges, that the discovery was voluminous, that there were dozens of potential witnesses and that several people were charged as a result of the occurrence. The statute, however, does not draw distinctions between simple and complex cases or between less serious charges and the most serious charges. *Contra* 18 U.S.C. § 3161(h) (2018) (allowing certain delays to be excluded from a defendant's speedy-trial period, including situations where the case is "so unusual or so complex, due to the number of defendants, the nature of the prosecution, *** that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits" of the statute). Rather, the statute provides that "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant[.]" 725 ILCS 5/103-5(a) (West 2020).

¶ 65    In a case such as the one before this court, given the number of witnesses, the number of people involved in the incident, and the nature of the ongoing investigation, the potential for conflicted counsel is readily foreseeable. Under such circumstances, it is perhaps unwise to schedule the initial trial date on day 120 of a defendant's speedy-trial term. While we understand that the State is allowed to seek joinder of defendants' cases under the circumstances that occurred in these matters, the State's decision to seek joinder of the defendants' cases in this matter, particularly when the motion was filed ten days before trial, was ill-advised in that it caused a delay that is not attributable to defendant.

¶ 66    The State accurately concedes that, in the absence of attributing any delay to defendant, there was "no way for trial to be reset within the 120-day speedy-trial term." For this reason, we need not address the State's argument that delay attributable to defendant occurred as a result of

23

the appointment of new counsel, Andrew Wilson. We acknowledge that Wilson had not yet received the discovery in this matter as of the September 26, 2022, hearing date, and we note that Wilson expressed concern about having sufficient time to prepare for the October 3, 2022, trial setting. Ultimately, however, Wilson did not ask for a continuance. The matter was continued from the October 3, 2022, setting on the court's motion, again for the appointment of conflict-free counsel for Simeon, and again over defendant's objection. Under these circumstances, we find that *Roberts* and *Collum* control, and that there was no delay attributable to defendant in the continuance from that date. For these reasons, under the facts and circumstances of this case, we find that the trial court abused its discretion by attributing delay to the defendant caused by the court's need to find conflict free counsel for Simeon. For the foregoing reasons, as defendant was not tried in accordance with section 103-5(a), his charges must be dismissed and he must be discharged from custody. 725 ILCS 5/103-5(d), 114-1(a)(1) (West 2020). Given our disposition, we need not address defendant's remaining claims.

¶ 67                             III. CONCLUSION

¶ 68     The judgment and sentence of the circuit court of Jackson County is reversed, the matters are dismissed, and defendant is ordered to be discharged.


¶ 69     Reversed, dismissed, and defendant discharged.